Manuel Nieves Bonet, demandante y apelante, *v.* La Mercantil Sucrs. de J. Morales Díaz, S. en C., demandada y apelada.

Núm. 8665. *Sometido:* Noviembre 24, 1943. *Resuelto:* Enero 13, 1944.

*Enrique Báez García,* abogado del apelante; *A. Ramírez Silva,* abogado de la apelada.

El Juez Presidente Interino Señor Travieso emitió la opinión del tribunal.

La sociedad mercantil J. Morales Díaz, S. en C., aquí demandada, y la Harvey's Brokerage Company, de Crowley, Louisiana, celebraron un contrato por virtud del cual ésta última vendió a la primera mil sacos de arroz al precio de $3.30, para ser entregados C.I.F. en Mayagüez, debiendo hacerse "cinco embarques semanales empezando en la primera quincena de Octubre", 1939. El contrato fué firmado el 4 de septiembre de 1939. El día 11 del mismo mes la sociedad demandada lo cedió al demandante, recibiendo de éste un cheque por la suma de $1,000 y un giro aceptado por $300 a 60 días vista.

En la demanda radicada por Manuel Nieves Bonet se alega en substancia que después de haber cedido al demandante el referido contrato, la sociedad demandada no notificó a la casa vendedora la cesión así hecha; que el demandante nunca recibió aviso de la casa vendedora comunicándole su aceptación del traspaso del contrato; que por ese motivo nadie le avisó al demandante de la llegada al puerto de Mayagüez, en octubre 23 de 1939, del primer cargamento de 200 sacos de arroz, y que no fué hasta el 1ro. de noviembre siguiente que el demandante tuvo conocimiento de ese hecho, así como de que en 28 de octubre había llegado el segundo embarque de 200 sacos; que el demandante se enteró de la llegada del arroz cuando en noviembre 1, 1939 un empleado del Banco le presentó tres conocimientos de embarque, cada uno por 200 sacos, y le informó que el arroz estaba depositado con la Mayagüez Dock & Shipping Co., Inc. a nombre de la sociedad demandada, la cual había manifestado que el arroz no le pertenecía; que el demandante se negó a recibir el arroz por haber éste llegado fuera del contrato y por entender que la tardanza en enviarlo y el no habérsele notificado la llegada, le relevaban de cualquier obligación en que hubiera incurrido por virtud del contrato;

que el demandante solicitó inmediatamente de la demandada la devolución de los mil dólares pagados y la cancelación del giro aceptado; que la demandada procedió entonces a hacerse cargo del arroz, y sin notificar a la vendedora, Harvey's Brokarege Co. la determinación del demandante, dió por rescindido el contrato de septiembre 11, 1939, vendió 600 sacos a "F. Carrera & Hno." en Mayagüez, conservando para sí los 400 sacos restantes; que la sociedad demandada no obstante haber rescindido el contrato se ha negado a devolver al demandante la suma de mil dólares y a cancelar el giro aceptado; que la razón legal que tiene el demandante para alegar que el contrato quedó rescindido se basa en el hecho de que la demandada no se ajustó a las disposiciones del artículo 332 del Código de Comercio. Pide el demandante que se dicte sentencia dando por rescindido el contrato y condenando a la demandada a devolver las sumas y el giro recibido y al pago de las costas y honorarios de abogado.

Contestó la demandada y alegó, en síntesis, que después de haber obtenido el contrato con Harvey's Brokerage Co. lo traspasó al demandante, mediante una prima o beneficio de $1,000 que el demandante pagó a la demandada, más la suma de $300 que el demandante pagó en un giro aceptado a Damián del Moral, agente que intervino en la operación de cesión del contrato; que después de haberse desembarcado los dos primeros lotes de 200 sacos cada uno, el demandante se negó a aceptar los conocimientos, a pagar el arroz y a levantarlo del muelle, motivo por el cual la demandada dió por rescindido el contrato, pagó el arroz a los agentes de la vendedora en Puerto Rico y se subrogó de nuevo en el contrato por incumplimiento del mismo por parte del demandante.

Como defensa especial, alegó la demandada que entre ella y el demandante se convino darle al contrato el carácter de un traspaso en que intervinieran el demandante y la demandada, con exclusión de la Harvey's Brokerage Co.; y que la

razón por la cual se hizo el convenio en esa forma fué que el demandante no podía hacer ninguna compra a su nombre, ni a la Harvey's Brokerage Company ni a ninguno de los molinos de la Rice Millers Association, por haber todos ellos decidido no celebrar transacciones de compraventa de arroz con el demandante; que en la fecha en que se celebró el traspaso del contrato, el precio del arroz era alrededor de $5, pero que al llegar el primer embarque el precio había bajado a $3.55, y que esa fué la razón por la que el demandante, al darse cuenta de la pérdida que iba a sufrir, se negó a aceptar el arroz poniendo como pretexto que éste había llegado tarde; y que lo cierto es que en el traspaso nada se convino en cuanto a la fecha de llegada y sí en cuanto a la del embarque del arroz.

Celebrada la vista del caso, la Corte de Distrito de Mayagüez dictó sentencia desestimando la demanda y condenando al demandante al pago de las costas, sin incluir honorarios. No estando conforme el demandante, apeló. En apoyo de su recurso alega que la corte inferior erró al aplicar a los hechos del caso las disposiciones del Código Civil en vez de las del Código de Comercio, que son, a su juicio, las aplicables por tratarse de un contrato mercantil y ser ambas partes comerciantes; y que la sentencia recurrida es errónea por ser contraria a la preponderancia de la evidencia.

Que el demandante y la sociedad demandada son comerciantes es un hecho admitido por las alegaciones. La demandada alega sin embargo, que el contrato entre ella y el demandante no fué uno de compraventa mercantil y sí el traspaso de los beneficios que la demandada hubiera podido obtener del arroz ordenado a la Harvey's Brokerage Co; que el demandante no pagó nada a cuenta del precio del arroz; que la demandada no quedó relevada de sus obligaciones para con la Harvey's Brokerage Co. en cuanto al pago del arroz ordenado; y que lo que adquirió el demandante

por vitud de la cesión que le hiciera la demandada fué el derecho a obtener el arroz mediante el pago del precio estipulado entre la demandada y la compañía vendedora.

Para poder resolver si la sentencia recurrida es, según alega el apelante, contraria a la preponderancia de la evidencia se hace necesario que hagamos un detenido estudio de la presentada por una y otra parte.

Admitidos sin oposición el contrato entre Harvey's Brokerage Co. y la demandada y la carta por la cual la demandada traspasó el contrato al demandante, declaró éste y dijo: que no recibió el arroz en la época señalada en el contrato; que de acuerdo con el contrato, el arroz debía estar en Mayagüez allá para el 21 ó 22 de octubre, y que a pesar de haber llegado la mercancía él no fué notificado hasta el 1ro. de noviembre, que había dos embarques en el muelle; que fué el Banco el que le notificó y no la demandada; que en noviembre 1ro. él escribió a la demandada informándole que no le era posible aceptar el arroz ''debido a que no se ajustaron a la forma de entrega de acuerdo con lo convenido'' y que por ese motivo había resuelto rescindir el contrato y solicitar la devolución de la suma pagada; que el 2 de noviembre la demandada le contestó por escrito informándole que ''de acuerdo con dicho contrato de traspaso usted viene obligado a hacerse cargo del pago de ese arroz a la Harvey's Brokerage Co. al precio consignado en el contrato de $3.30 por saco, además de la obligación contraída del pago de beneficio a nosotros ascendente a la suma de $1,300''; que no sabe donde está el arroz, que él no lo vendió ni lo levantó del muelle ni autorizó a persona alguna para que lo recogiera; que en noviembre 10, 1939, recibió una carta de la demandada informándole que habían vendido el primer lote de arroz, por cuenta del demandante, a la casa de F. Carrera & Hno. ''con el fin de poder satisfacer a la casa vendedora del mismo, en los Estados Unidos, el importe de la correspondiente factura''; que en dicha carta se le informaba además que el

lote de 200 sacos había sido vendido a $3.55 el saco, o sea por un total de $710, y que después de pagar el importe del giro, comisión de venta y almacenaje quedaba un sobrante de $36 el cual conservarían en su poder hasta que se hiciera la liquidación final de todos los lotes, cuando, si hubiere algún sobrante, éste sería entregado al demandante; que en 22 de noviembre de 1939 el demandante recibió otra carta de la demandada en la que le informaba haber vendido dos lotes más, 400 sacos, a $3.60 el saco, por un total de $1,440, de cuya suma quedaba un sobrante de $92; y, por último, que en febrero 17 de 1940 la demandada le informó de la venta de los 400 sacos restantes por $1,320, o sea a $3.50 el saco, con un sobrante de $70.27 a favor del demandante.

Repreguntado por la defensa, el demandante declaró: que compró el contrato por $1,300; que él venía obligado a pagar los mil sacos a $3.30 más los $1,300, saliéndole el quintal a $4.60; que se negó a recibir el arroz porque no se le notificó cuando la mercancía llegó al muelle; que es cierto que él alegó en la demanda que había rechazado el arroz "por entender que dicho arroz había llegado fuera del contrato"; que el arroz llegó dentro del término del contrato; que él no lo aceptó porque de acuerdo con el contrato debió haber venido a su nombre y no vino a su nombre, y en segundo lugar porque la demandada tenía que notificarle la llegada del arroz y no se la notificó.

El primer testigo de la demandada fué su socio gestor Rafols Morales Asencio. Declaró que el Sr. Damián del Moral le visitó "para ver si yo quería vender un lote de arroz que le había comprado a la Harvey's Brokerage Co., y yo gustosamente lo cedí", diciéndole a del Moral que después de mil pesos en adelante cogiera los beneficios que pudiera sacar; que le dijo a del Moral "que le podía ceder los beneficios, que después de mil pesos los cogiera para él"; que los mil pesos los cogía la demandada por los beneficios "porque yo no tenía el arroz"; que él no es agente de Harvey's Brokerage Co.

Repreguntado el Sr. Morales Asencio, declaró: que él le dijo a del Moral que no vendía el contrato, que vendía los beneficios; que cuando hizo el convenio estaban presentes solamente del Moral y Alejandro Bravo; que el que hizo la transacción con el demandante fué del Moral; que en la carta de septiembre 11, 1939 hizo constar que traspasaba el contrato cubriendo mil sacos de arroz "pero era por los beneficios"; que él vendió los beneficios y el contrato tenía que comprarlo y pagarlo el demandante Nieves Bonet; que él le vendió el contrato y obtuvo los beneficios; que el arroz "costó a $3.30 y a $4.60 se lo dí a él"; que le vendió el arroz al demandante y que éste tenía que levantarlo del muelle; que la demandada levantó el arroz porque el demandante quiso rescindir el contrato y se negó a aceptar el arroz y, además, porque la demandada tenía que cumplir su contrato con la Harvey's Brokerage Co.; que el demandante no lo autorizó para que levantara el arroz ni para que lo vendiera, ni para pagar comisión de venta y gastos de almacenaje.

Damián del Moral, testigo de la demandada, declaró: que es comisionista; que allá para el 9 de septiembre, 1939 el demandante le preguntó si había algún "chivo" que comprar, si sabía de alguno que vendiera arroz; que él le contestó "yo sé de un cliente que tiene comprado arroz que te puede ceder los beneficios"; que al día siguiente fué a ver a Morales Asencio y le dijo que si quería vender un lote de arroz y Morales le dijo: "Sí, cómo no, siempre que me saques mil pesos para mí; y lo más que saques es para tí"; que el día 11 el demandante fué a verle y le preguntó si le había conseguido el arroz y él le informó que sí, que tenía un negocio, y le pidió $1,300 de beneficio; y después de una discusión el demandante aceptó el precio; que en la mencionada fecha el arroz valía a $5.50 el saco; que el negocio que se hizo fué una cesión de beneficios y que el arroz quedaría y vendría a nombre de la demandada y que si el demandante no levantaba el arroz, la demandada tenía que levantarlo;

que el primer lote de arroz llegó el 23 de octubre 1939 y que en esa misma fecha él se lo notificó personalmente al demandante y que el Banco también se lo notificó; que también le notificó las sucesivas llegadas de arroz; que cuando le notificó la llegada del día 23, el demandante no dijo nada, pero después le dijo que no quería el arroz, que no tenía interés, que Rafols se hiciera cargo del arroz; que el 11 de septiembre cuando se hizo el traspaso el arroz valía $5.25 ó $5.50, y en octubre 23, cuando llegó el primer lote, valía $3.60 y $3.70. Repreguntado por la parte demandante, declaró: que después que se hizo el contrato, el arroz quedó del demandante, pero que si éste no pagaba el precio, la demandada era quien le respondía a la casa vendedora; que fué él quien vendió el arroz al mejor postor, que fué la casa de Carrera, pero no se celebró subasta; que vendió el arroz porque la demandada le informó que estaba apurada y tenía que pagar los giros; y que el demandante no le autorizó para vender el arroz.

La declaración del testigo Alejandro Bravo corroboró la del testigo del Moral.

De la prueba que acabamos de sintetizar resulta que la sociedad mercantil demandada, habiendo comprado a Harvey's Brokerage Company 1,000 sacos de arroz al precio de $3.30 por saco, los vendió al demandante, comerciante, por el precio convenido de $4.60 por saco, realizando así la firma demandada un beneficio de $1.30 por saco o sea un total de $1,300, suma que el demandante pagó a la demandada al cerrarse el negocio. La prueba creída por la corte sentenciadora demuestra sin lugar a dudas que el arroz fué embarcado y llegó al puerto de Mayagüez dentro del término estipulado; que el demandante fué avisado oportunamente de la llegada del arroz; y que el demandante no estuvo legalmente justificado al negarse a aceptar el arroz y a pagar los giros que le fueron presentados.

Nos encontramos, pues, frente a un caso en que el comprador en un contrato de compraventa mercantil rehusó sin

justa causa recibir los efectos comprados. De acuerdo con el artículo 2 del Código de Comercio, ese contrato debe regirse por las disposiciones de dicho Código, y en su defecto por los usos del Comercio observados generalmente en cada plaza, y a falta de ambas reglas, por las del derecho común.

El artículo 250 del Código de Comercio, dispone:

"Si el comprador rehusare sin justa causa el recibo de los efectos comprados, podrá el vendedor pedir el cumplimiento o rescisión del contrato, depositando judicialmente en el primer caso las mercaderías."

De acuerdo con el citado artículo, al negarse Nieves Bonet, el comprador, a aceptar y pagar el resto del precio del arroz, la firma vendedora pudo a su elección hacer una de dos cosas: (*a*) depositar judicialmente el arroz y exigir al comprador que cumpliese el contrato; o (*b*) dar por rescindido el contrato. En el primer caso, el vendedor no estaba autorizado legalmente para incautarse del arroz y venderlo en venta privada, sin intervención de los tribunales, especialmente si se tiene en cuenta que el comprador había pagado la suma de $1,300 como parte del precio convenido. La firma vendedora optó por dar por rescindido el contrato y procedió a incautarse del arroz y a venderlo en venta privada, sin obtener el consentimiento del comprador y sin la intervención judicial; y se ha negado a devolver la suma recibida a cuenta del precio.

Habiendo optado por la rescisión del contrato, no estaba obligada la firma vendedora a depositar judicialmente el arroz. Tenía derecho a incautarse de la mercancía y a disponer de ella a su antojo, pero sujeta al cumplimiento de lo dispuesto por el artículo 1247 del Código Civil, que lee así:

"La rescisión obliga a la devolución de las cosas que fueron objeto del contrato con sus frutos y del precio con sus intereses; en consecuencia sólo podrá llevarse a efecto cuando el que la haya pretendido pueda devolver aquello a que por su parte estuviese obligado."

¿Estaba legalmente autorizada la vendedora al dar por rescindido el contrato, para vender la mercancía por cuenta del comprador y sin su consentimiento y para retener para sí la suma de $1,300? El artículo 1247 arriba citado no solamente no le confiere ese derecho, si que por el contrario, le impone la obligación de devolver el precio con sus intereses. Sostener que la vendedora tenía derecho a vender el arroz por cuenta del comprador y a retener para sí el beneficio del contrato, equivaldría a sostener, no obstante lo dispuesto por el artículo 250 del Código de Comercio, que el vendedor tiene derecho a obligar al comprador a cumplir el contrato, sin estar obligado a hacer el depósito judicial de la mercancía como lo requiere dicho estatuto.

*Por las razones expuestas, opinamos que la corte inferior erró al desestimar la demanda y que la sentencia recurrida debe ser revocada, dictándose en su lugar otra declarando rescindido el contrato entre las partes litigantes y condenando a la sociedad demandada a devolver al demandante la suma de $1,300 con intereses legales desde el 11 de septiembre de 1939 hasta su total pago, más las costas.*

El Juez Asociado Sr. Snyder no intervino.